FRANCIS BURNAP, administrator, &c., plaintiff in error, *v.* WILLIAM P. DENNIS, defendant in error.

*Error to Winnebago.*

As a general rule, an executor or administrator shall not be made personally liable for costs, while conducting suits in his official capacity, and for the benefit of the estate; although, should he act *male fide,* or be guilty of gross negligence, undoubtedly he might be made personally responsible.

It is improper to award an execution for costs against an administrator, suing in such capacity, even against the estate, in the hands of the administrator; but the proper course is to order that the costs of the suit be paid in the due course of administration.

Each count in a declaration must be considered by itself, and stand or fall by its own facts.

An administrator has no authority to sell the personal property of his intestate at private sale; and for the preventing of such sale no action will lie.

A declaration, in an action by an administrator against a wrong-doer, for an injury sus-

tained by the acts of the latter, in threatening to prosecute any person who should purchase or remove certain personal property offered for sale at an administrator's sale, should allege special damages, or the action cannot be maintained. And the plaintiff must show that the damages actually accrued in consequence of the wrongful acts of the defendant, and not in any degree in consequence of the negligence or omission of the plaintiff. It is not sufficient to state in such declaration that the plaintiff was about to offer the property for sale. The declaration should show that the plaintiff offered the property for sale, or made some effort to sell it.

*Sed quere,* Whether an action can be maintained for such injury.

THIS cause was heard in the Court below, at the August term, 1842, before the Hon. Thomas C. Browne. Judgment was rendered for the defendant, on demurrer to the plaintiff's declaration, and the cause was brought to this Court by writ of error.

FRANCIS BURNAP, *pro se:*
Upon the question, whether the action will lie, the plaintiff refers to a precedent in Yates' (N. Y.) Pract. 600, and the references thereto appended, in a note, particularly a case in Hall's Reports of the Superior Court of New York City, from which the precedent is taken; Aldridge *v.* Stuyvesant, 1 Hall 214; Digest N. Y. Reports 405, §§ 82—7.

As to the award of execution, see Statute of Wills, §§ 110, 112, 114, 116, 135.

B. S. EDWARDS and J. BUTTERFIELD, Jr., for the defendant in error:
Each count of the declaration is defective. 1 Chit. Plead. 450.

This action cannot be sustained. 4 Burr. 2422. The case referred to by the plaintiff's attorney, in Hall's N. Y. City Reports, is as to real estate.

The judgment is properly entered. Toller on Ex'rs. 440, and authorities there cited; 3 Burr. 1584; 6 Term R. 654; R. L. 643–4, § 97.

CATON, Justice, delivered the opinion of the Court: (1)
This was a special action on the *case*, brought by the plaintiff here against the defendant, in the Winnebago Circuit Court. The declaration contains three counts. The first count states that the plaintiff, as administrator of John Miller, deceased, on the 8th of October, 1841, at, &c., as such administrator, was the owner of a quantity of bricks, which it was his duty to sell for the benefit of the estate, and which he might and would have sold but for the grievances complained of. Yet the defendant, well knowing the premises, and being evilly disposed, &c., and contriving, &c., and to prevent the sale and disposition of said bricks, on, &c., at, &c., in the presence and hearing of divers person, threatened and me-

(1) WILSON, Chief Justice, was not present at the argument of this cause, and gave no opinion.

naced, that he would prosecute and sue any person who should purchase, remove, or touch the said bricks, he, the said defendant, then and there, well knowing that he had no reasonable or probable cause for such prosecution or action.

The second count states that the defendant, contriving and intending, as in the first count, on, &c., at, &c., the plaintiff being then and there about to offer the said bricks at auction, pursuant to notice, further threatened, menaced, and proclaimed aloud, in the presence of one Sanford and divers other persons, of the number of twenty and more, who were assembled at an auction sale, then and there held by the said Sanford, and in reference to the said intended sale of said bricks, that he, the said defendant, would prosecute and bring action against any person who should touch or remove any of said bricks, well knowing that he had no lawful or probable cause for such prosecution or action; *per quod* the plaintiff has been unable to sell the said bricks, and the same are greatly damaged and decayed, and have been of no value to the plaintiff.

The third count states that afterwards, to wit, on, &c., at, &c., a negotiation was had with one Peters about said bricks, and that it was agreed between them, that the plaintiff should sell and deliver the bricks to Peters, and that Peters should secure to be paid to the plaintiff therefor the sum of $25, and that Peters was ready to fulfill, and would have fulfilled, on his part, but that the defend-. ant, well knowing the premises, and further contriving to injure the plaintiff, and to prevent the sale and delivery of said bricks to Peters, pursuant to the arrangement with him, threatened and menaced the said Peters, substantially as he had threatened and menaced others, as stated in the other counts; by reason whereof, Peters, knowing the defendant to be a fraudulent and litigious person, was deterred and prevented from giving said security, &c., and the plaintiff has thereby lost the sale of said bricks, and been deprived of the benefit he would otherwise have derived therefrom, to his damage, &c.

To this declaration there was a general demurrer, which was sustained by the Court, and judgment rendered against the plaintiff for costs, and execution awarded thereon.

For reversing this judgment, two errors are assigned : first, that the Court erred in sustaining the said demurrer; and, secondly, that the Court erred in rendering judgment for costs against the plaintiff personally, when the order should have been that the plaintiff pay the costs out of the estate of the intestate.

Admitting, for the purposes of the present enquiry, that an action may be maintained for an injury of the character here complained of, we will proceed to ascertain whether the cause of action is sufficiently set forth in either of the counts in this declaration. The first count states that the plaintiff had the bricks, that it was his duty to sell, and that he might and would have sold them, but

for the wrongful acts of the defendant; and that the defendant, knowing this, maliciously interfered in the manner specified. This is one of those actions where special damages must be laid, and the plaintiff must show, in his declaration, that the damage complained of actually and positively occurred in consequence of the wrongful acts of the defendant, and not in any degree in consequence of the negligence or omission of the plaintiff himself. It is not sufficient that the plaintiff alleges, in his declaration, that the defendant has committed a wrong, and that the plaintiff has been injured thereby, but he must show specifically how and in what manner. This count does not show that the plaintiff ever offered the bricks for sale, or ever let it be known that he would dispose of them, or made any efforts to find a purchaser. As an officer of the law, he had a specific duty to perform in relation to this property, and that duty is prescribed and pointed out by law. It was his duty to have advertised the bricks for sale, and, in pursuance of such advertisement, put them up at auction, and have seen whether any person would bid for them or not. By requiring this to be done, the law presumes that they could not be advantageously sold without it. The plaintiff does not complain that he himself was put in fear by the threats of the defendant, so that he dare not offer them for sale, and he certainly ought not to have stopped short of the duty which the law imposed on him, and to say, without an effort, or a trial, that those threats had produced such an universal consternation in the neighborhood, that those acts which his duty required him to perform would have been entirely unavailing, and that all reasonable efforts would have proved abortive. For this omission on his part, the plaintiff furnishes us no excuse; and who shall say, that, if he had performed all his duty, the bricks might not have been sold? Had the plaintiff shown that he was deterred from performing his duty by the threats of the defendant, without being subject to the imputation of temerity, the case might have been different. We are therefore of opinion that the first count is defective.

And the same objection also applies to the second count, although to a less extent. This count states that the plaintiff, being about to offer the bricks at auction, pursuant to notice, &c., the defendant made the threats, &c., complained of, in the presence of the persons assembled at the auction, whereby the plaintiff has been unable to sell the bricks. Here also the plaintiff stopped short of his duty, which required that he should actually offer the bricks for sale, at the auction; whereas, for aught that appears, as soon as the threats were made, he immediately suspended all further proceedings, and never tried to ascertain, by experiment, whether any one had the courage to set at defiance the defendant's menaces, and make the purchase. Had this been done, it is possible that the necessity for this suit might have been

superseded.  For this defect we are also of opinion that the second count is insufficient.

The third count states that the plaintiff had made an arrangement with one Peters for the sale of these bricks; that the terms had been agreed upon, and that security for the payment was to be given by Peters; but that, before the bargain was finally completed, the defendant again interfered, and threatened Peters, in the same manner that he had the others; by reason whereof, Peters was deterred and prevented from giving the security, and consummating the sale; whereby the plaintiff has lost the sale, and been deprived of the benefit he should have derived from it.  This count goes much further than the others, and had the plaintiff been acting in his private and individual capacity, it states sufficient to have maintained the action.  But by reference to the 93d section of our statute of wills, it will be seen that, as before stated, it is the duty of an executor or administrator to sell at public auction, after having given due notice; and, so far as it appears from this count, by attempting to sell at private sale, the plaintiff was doing an act not authorized by law, and for the preventing of which no action would lie.  I would not be understood to say, that, under no circumstances, can an administrator sell the estate of his intestate at private sale, so as to pass a valid title to the purchaser; but still, if he does take the responsibility of disposing of the estate in a different manner from that which is directed by the statute, he would be liable for any damage that might accrue to those interested in the estate, for thus stepping out of the path pointed out by the law.  But even admitting that such a necessity might arise, as would authorize an administrator to sell at private sale, this count shows no such necessity.  It must be remembered that each count must be considered by itself, and stand or fall by its own facts, as stated; and it does not appear in this count, that any sort of effort had ever been made to sell according to law.  For the reasons above stated, we are constrained to say, that no sufficient cause of action is shown in the third count.

Although it might be desirable that the Court should express an opinion whether an action could be maintained for the damage arising from the wrongful and malicious interference of an individual, in a case of this kind, when properly presented; yet, as the question does not necessarily arise in the decision of this demurrer, it is thought advisable that the Court should express no opinion on that point; although we should hesitate long before we should, by a decision of this Court, send forth a license to individuals to exert their ingenuity in devising new modes of vexing, harassing, and injuring their neighbors, and gratifying their malignity; and before we should assure wrong-doers that because they have found some way of committing wrong for the punishment of which there was no precedent, they may exercise, with impu-

nity, their malignant ingenuity in such new devices. Neither of the counts being sufficient, the demurrer to the declaration was properly sustained.

The second error assigned complains of the judgment for costs against the plaintiff. We think this objection is well taken. As a general rule, an executor or administrator shall not be made personally liable for costs while conducting suits in his official capacity, and for the benefit of the estate, although, should he act *male fide,* or be guilty of gross negligence, undoubtedly he might be made personally responsible. We also think it was improper to award any execution at all for the costs, even against the estate of the intestate, in the hands of the administrator; but the proper course would have been to order that the costs of this suit be paid in the due course of administration. But as there is no necessity for remanding the cause, that order will be entered up in this Court; and the judgment is reversed with costs.

*Judgment reversed.*